**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Ralph Terry WOLFE, Defendant–Appellant.**

No. 97CA2190.

Colorado Court of Appeals, Div. V.

Dec. 23, 1999.

Rehearing Denied Feb. 10, 2000.

Certiorari Denied Oct. 10, 2000.

Michael E. McLachlan, Solicitor General, John Daniel Dailey, Assistant Solicitor General, John J. Fuerst III, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

M. Colin Bresee, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Ralph Terry Wolfe, appeals the judgment of conviction entered on a jury verdict finding him guilty of theft. On May 27, 1999, we announced an opinion reversing defendant's judgment of conviction on the basis that his statutory speedy trial right had been violated. Shortly thereafter, we granted the People's motion to withdraw the opinion, pending clarification of the record.

On remand, the trial court corrected the transcript of the July 8, 1997, hearing which was the focal point of our analysis on the speedy trial issue. Upon review of the corrected transcript and consideration of the parties' supplemental briefs, we now affirm defendant's conviction.

Defendant was charged with theft arising out of an insurance fraud. He pled not guilty on February 24, 1997, and trial was scheduled for July 7, 1997. On July 8, 1997, because certain witnesses were not available for trial, the trial court granted the People's motion for continuance of the trial. It was the granting of this motion that formed the basis for defendant's statutory speedy trial argument.

Before addressing the merits of defendant's speedy trial contentions, we address two procedural issues raised by defendant relating to our withdrawal of the May 27, 1999, opinion and our remand to the trial court to clarify the record.

I. Propriety of Correcting the Record

Defendant asserts that, by failing to object to the designated record prior to the issuance of this court's opinion, the People waived any objection to the record as it was originally presented to this court. He further contends that, while C.A.R. 10(e) authorizes this court to correct the record, it does not authorize correction of the record after an opinion has

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General,

been issued. We disagree with both contentions.

### A.

■ C.A.R. 10(e) provides in pertinent part:

If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the trial court, either before or after the record is transmitted to the appellate court, or the appellate court, on proper suggestion or of its own initiative, may direct that the omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted. All other questions as to the form and content of the record shall be presented to the appellate court.

Here, the People filed their emergency motion to withdraw the court's opinion pending clarification of the record on June 2, 1999, six days after the opinion was announced.

The People asserted that after our original opinion was announced, they determined that our analysis of the statutory speedy trial issue was based upon an incorrect transcript. Supported by affidavits of the two trial prosecutors and defendant's trial attorney, the People alleged that in transcribing the hearing on the speedy trial issue, the court reporter incorrectly attributed certain statements made by defense counsel to the prosecutors and vice versa. After considering defendant's response, we granted the People's motion.

We agree with defendant's assertion that the court of appeals has a significant interest in ensuring that its opinions, once issued, are final, and not subject to vacation because of the belated discovery of new information by a party or its attorney. Nevertheless, C.A.R. 40 contemplates that where a mistake has been made, parties may file petitions for rehearing, which may lead to the granting of such petitions and the withdrawal of an opinion in an appropriate case.

Further, C.A.R. 10(e) specifically provides that the appellate court, on proper motion, may direct that an omission or misstatement in the record be corrected, and if necessary that a supplemental record be certified and transmitted. Nothing in the plain language of this rule precludes an appellate court from considering a motion to correct a misstatement in the record after an opinion has been announced. While there is a point at which it may be considered too late for a party to seek correction of the record, here, the People filed their motion only six days after the announcement of this court's opinion. Accordingly, we conclude that it was appropriate to consider the People's motion to withdraw our opinion and request clarification of the record.

### B.

■ Defendant next contends that even if we had the authority to entertain the People's motion, we should not recertify the corrected record because the Office of the Attorney General knew about the errors in the record before it wrote and filed its answer brief. We conclude that it was appropriate to correct the record under the circumstances presented here.

Defendant's contention is based upon testimony by one of the trial prosecutors at the hearing on remand to the effect that he was aware of and had informed the assistant attorney general of an error in the trial transcript before the People filed their answer brief in this matter. Defendant's contention is based upon evidence adduced at the hearing on remand, which was in apparent contradiction to the People's motion to withdraw this court's opinion. That motion stated in part that, since the announcement of that opinion, "the Attorney General's office has learned that its position on appeal was based on a significant misapprehension of the facts." The People's motion further stated that because the transcript of the July 8, 1997, hearing was not apparently flawed, the assistant attorney general did not send a copy of it to the office of the Jefferson County District Attorney for review. It further indicated that the Office of the Attorney General presumes that the transcripts it receives are accurate.

Based upon the trial prosecutor's testimony, defendant argues that the People's belated attempt to correct the record should be barred based upon the doctrines of laches and waiver. We disagree.

■ The doctrine of laches permits a court to deny a party equitable relief if his or her unconscionable delay in enforcing rights has prejudiced the party against whom relief is sought. *Colorado Ground Water Commission v. Dreiling,* 198 Colo. 560, 606 P.2d 836 (1979). Also, a party may waive its right to correct the record when it does not act promptly after trial. *See Halliburton v. Public Service Co.,* 804 P.2d 213 (Colo.App. 1990). Whether the elements of these doctrines are present is essentially a question of fact to be determined upon the evidence presented. *Montezuma County Department of Social Services v. Laner,* 937 P.2d 903 (Colo. App.1997).

On remand, defendant presented his argument of laches and waiver by the People, and the trial court rejected it. We conclude that the record supports the trial court's rejection of defendant's contention.

While it would have been preferable for the People to have alerted the trial court or this court to their concern about the accuracy of the transcript before our opinion was announced, it was within the trial court's discretion to determine that there was no waiver or laches shown. In view of the fact that the parties agreed the transcript was inaccurate, the trial court properly concluded that the interest in the finality of our original opinion was outweighed by the importance of ensuring an accurate result on appeal.

## II. Effect of Court Reporter's Error

Relying upon a special concurrence in *King v. People,* 54 Colo. 122, 129 P. 235 (1913), defendant asserts that he should not suffer because of an error by the court reporter when she did not transcribe accurately the court proceeding on July 8, 1997. We are not persuaded.

In *King,* an official stenographer was present and took down the trial testimony in shorthand. After the trial, his shorthand notes were unintentionally destroyed. One justice, specially concurring, concluded that King should not have to rely on gathering persons who were present at the trial, including the trial court judge, to reconstruct the trial testimony. He wrote:

> It cannot be the law of this state that the defendant ... must suffer for the fault of the court stenographer whose duty it was to preserve his notes.... Let him who is at fault bear the resulting burden.

*King v. People, supra,* 54 Colo. at 131–32, 129 P. at 239–40.

*King* predates the promulgation of the Colorado Appellate Rules, and specifically C.A.R. 10(e), which established a specific procedure for correcting a record. Additionally, the magnitude of the loss was much greater in *King,* since the entire trial testimony was inadvertently destroyed. Here, in contrast, the only asserted errors concerned relatively few lines of testimony by the prosecutors and defendant's trial attorney, which had been improperly attributed to each party.

Accordingly, we conclude that it was reasonable for the trial court to correct the record here, and, that, indeed, an injustice would occur if this appeal were decided on the basis of an incorrect record.

## III. Statutory Speedy Trial

■ In his supplemental brief, defendant argues that the corrected record does not support the trial court's finding that the People exercised due diligence in attempting to secure the presence of out-of-state witnesses, and that the statutory speedy trial period was not tolled under § 18–1–405(6)(g)(I), C.R.S.1999. We disagree.

■ Under § 18–1–405, C.R.S.1999, a defendant has the right to be brought to trial within six months of pleading not guilty. This language is mandatory, and trial must be held within six months unless there is a period of delay which fits within one of the exclusionary provisions in the statute. Failure to comply with the statute requires dismissal of the charges with prejudice. *People v. Martin,* 732 P.2d 1210 (Colo.1987).

Section 18–1–405(6)(g)(I) provides for an exclusion of time from the speedy trial peri-

od, not to exceed six months, resulting from a continuance granted at the request of the prosecuting attorney, without the consent of the defendant. The continuance must have been sought because of the unavailability of evidence material to the state's case when the prosecutor has exercised due diligence to obtain the missing evidence and there are reasonable grounds to believe the evidence will be available at a later date.

■ A party seeking a continuance attributable to an unavailable witness bears the burden of proving that he or she has used due diligence in attempting to secure the witness' presence. See People ex rel. Gallagher v. County Court, 759 P.2d 859 (Colo. App.1988).

■ A trial court's finding of due diligence under § 18–1–405(6)(g)(I) must be supported by the record. Sweet v. Myers, 200 Colo. 50, 612 P.2d 75 (1980); People v. McCormick, 839 P.2d 474 (Colo.App.1992), rev'd on other grounds, 859 P.2d 846 (Colo.1993).

■ Reliance on informal and highly uncertain procedures to obtain the presence of essential witnesses, even if customary, does not amount to due diligence. See People v. Stanchieff, 862 P.2d 988 (Colo.App.1993) (because mailing a subpoena to a witness, without more, did not comply with the requirements for subpoenaing witnesses set forth in Crim. P. 17(d), prosecution failed to demonstrate good cause for continuing preliminary hearing and was barred from proceeding by direct filing of information after county court dismissed charge).

■ To demonstrate due diligence, a prosecutor may be required to use available legal mechanisms to secure the presence of persons necessary for trial. People v. Mims, 155 Misc.2d 163, 587 N.Y.S.2d 536 (1992) (no due diligence shown where People did not attempt to subpoena the witnesses or inquire as to their whereabouts, or take appropriate measures to ensure their appearances in court); State v. Hairychin, 136 Wash.2d 862, 968 P.2d 410 (1998) (state's failure to subpoena victim was lack of due diligence precluding continuance under juvenile speedy trial rule). Cf. People v. Byrne, 762 P.2d 674 (Colo.1988) (no due diligence where, after learning of the defendant's location, prosecutor did not request writ to secure defendant's presence).

Out-of-state witnesses can be compelled to testify in Colorado pursuant to the "Uniform Act to Secure the Attendance of Witnesses From Without a State in Criminal Proceedings" (the Uniform Act), § 16–9–201, et seq., C.R.S.1999. See Crim. P. 17(e)(2).

Under the Uniform Act, a judge from another participating state may issue a certificate requiring a material witness to travel from that state to testify in Colorado and, if necessary, may even order the witness taken into custody. Texas has adopted the Uniform Act. Tex.Code Ann. § 24.28 (Vernon 1998).

In our original opinion, we concluded, "The record does not support the trial court's finding that the prosecution exercised due diligence in attempting to secure the presence of out-of-state witnesses." Accordingly, we held that defendant's speedy trial period was not tolled under § 18–1–405(6)(g)(I).

Our conclusion was based upon the facts as set forth in the original transcript of the July 8, 1997, hearing. The record there reflected that, almost two weeks before trial, the prosecutors were put on notice that one Texas witness would not honor a mailed subpoena and would not cooperate with an informal request to testify. We further stated: "The prosecutors made no effort to use the procedures of the Uniform Act to compel that witness to attend, apparently because they determined they could proceed without his testimony." We also noted that the prosecutors did not allege that they lacked sufficient time to use the Uniform Act procedures.

However, based upon the corrected transcript, we now conclude that the circumstances were at odds with what we had believed them to be. The corrected transcript reveals that the following transpired at the hearing on July 8, 1997:

Defendant's trial counsel stated to the court that he was no longer seeking a continuance, despite the unavailability of one of his out-of-state witnesses. The prosecution responded that it was unable to proceed and

was seeking a continuance because its two out-of-state witnesses had refused to attend. One prosecutor explained that he had issued "straight subpoenas" to these witnesses because they had been cooperative with the prosecution throughout the entire proceeding, had made flight arrangements and hotel arrangements, and had only informed the prosecution on July 3, the last business day before trial, that they no longer planned to be present for the trial.

Based upon those witnesses' continuing cooperation, the prosecutors assert, and we agree, that they had a reasonable basis to believe that the witnesses would appear for trial on July 7 or 8, 1997. The prosecutors could not reasonably have anticipated that the witnesses would change their minds at the last minute based upon apparent communications from another lawyer in the law firm of defendant's trial counsel. That lawyer had indicated to them that a "straight subpoena" was not binding on them, and, therefore, they were not required to appear in court in Colorado.

By the time the prosecutors learned that these witnesses were not coming to Colorado, it was too late to invoke the procedures under the Uniform Act to compel them to testify. The record supports the trial court's conclusion that the witnesses were material and would be available for the later trial date. In addition, at the July 8, 1997, proceeding, the prosecutor represented to the court that he would file a motion under the Uniform Act to compel the Texas witnesses to testify. One of the prosecution's Texas witnesses did testify at the October trial.

Under these circumstances, we conclude the trial court did not abuse its discretion in finding that the prosecutors had acted with due diligence in seeking to obtain the presence of its out-of-state witnesses for the trial, and that a continuance was warranted pursuant to § 18–1–405(6)(g)(I), C.R.S.1999. We therefore conclude that defendant's statutory right to speedy trial was not violated.

Because we affirm the trial court's grant of a continuance under the speedy trial statute, we must address defendant's remaining arguments raised in his original appeal.

## IV. Constitutional Right to Speedy Trial

Defendant next contends that his constitutional right to speedy trial was violated. We disagree.

Whether a defendant's constitutional right to speedy trial has been violated is based on a balancing test consisting of: (1) the length of delay; (2) the reasons for delay; (3) the defendant's assertion of the speedy trial right; and (4) the prejudice to the defendant. *People v. Harris* 914 P.2d 425 (Colo.App.1995). We conclude that, based on this test, defendant's constitutional right to speedy trial was not violated when the trial court granted a continuance.

Here, the delay was only three and one-half months. The reasons for the delay were reasonable and legitimate under the circumstances. The trial court found that the prosecutor had exercised due diligence to obtain the cooperation and testimony of the witnesses in question, but due to unforeseen problems, they had refused to attend. Further, defendant did not assert that his right to a speedy trial was being violated when the court reset the case for trial. Nor did he suffer prejudice based upon additional expense and anxiety. During the delay, defendant was on bond and living in Louisiana.

Thus, defendant failed to meet any prong of the balancing test, and accordingly, the continuance did not violate his constitutional right to speedy trial.

## V. Dismissal of Juror

Defendant asserts that his right to a fair and impartial jury was violated because the trial court, *sua sponte*, dismissed a prospective juror and did not record the side bar conference during which the reason for excusing the juror was discussed. We do not perceive any reversible error.

A criminal defendant is entitled to a record on appeal that includes a complete transcript of the trial proceedings. *People v. Rodriguez*, 914 P.2d 230 (Colo. 1996). Thus, the trial court judge in a criminal case must record all bench and side bar conferences unless the parties agree to conduct such conferences off the record. How-

ever, a failure to record such conferences does not automatically constitute reversible error. *Jones v. District Court,* 780 P.2d 526 (Colo.1989).

 It is the duty of the party alleging error to provide the appellate court with an adequate record in support of the alleged error. *Westrac, Inc. v. Walker Field,* 812 P.2d 714 (Colo.App.1991); *see* C.A.R. 10(c).

 A defendant must establish specific prejudice that resulted from an incomplete record. A defendant cannot rely on bare assertions that an incomplete record impaired his or her ability to appeal. *People v. Rodriguez, supra.* Further, prejudice resulting from the dismissal of a juror will not be presumed; a defendant must demonstrate that either the remaining jurors were biased or unfair, or that he or she was prejudiced specifically by the dismissal of the juror in question. *People v. Johnson,* 757 P.2d 1098 (Colo.App.1988).

Here, there is no evidence that defendant's trial attorney objected to the juror's dismissal, sought to have the side bar conference recorded, or summarized the bench conference on the record. Nor did defendant show that any prejudice resulted from the court's dismissal of the juror, or its failure to record the side bar conference.

Therefore, we conclude that the trial court did not abuse its discretion when it dismissed the juror in question and did not commit reversible error by not recording the side bar conference.

## VI. Introduction of Documents

 Defendant next asserts that the trial court erred when it allowed the prosecutor to question him regarding certain documents because of the prosecutor's previous representation that he would not enter the documents into evidence. We disagree that reversal is required on this basis.

 When a court is called upon to determine the substance of an alleged promise by a prosecutor, it must weigh the evidence and make factual findings to resolve the dispute. However, this does not require the trial court to conduct a formal hearing on

that issue. The trial court's findings are reviewed with the same deference afforded evidentiary rulings. *People v. Elsbach,* 934 P.2d 877 (Colo.App.1997).

Defendant asserts that the trial court should have conducted a hearing to ascertain what the prosecutor promised defendant, and whether that promise was judicially enforceable. Here, it is undisputed that the night before the trial started, the prosecutor was provided with certain time records of defendant which had not previously been disclosed. On the morning of trial, the prosecutor provided copies of these time records to defendant's attorney, and represented that he would not introduce them in his case. However, after defendant referenced the time records during his direct examination, the prosecutor used the disputed documents to impeach testimony given by defendant on direct examination.

After hearing brief arguments by counsel regarding the documents, the court determined that the prosecutor could cross-examine defendant about the documents, provided that defendant first identified the documents, and that the prosecutor only used them in his questioning of defendant. The prosecutor agreed and did not seek to have the disputed documents admitted into evidence.

We conclude that the trial court did not abuse its discretion. The record supports its decision to allow the prosecutor to cross-examine defendant regarding the disputed documents, but not to have such documents admitted as evidence. Defendant does not assert that the prosecutor promised he would not refer to these documents or question him about them. He merely asserts that the prosecutor promised he would not seek to have the documents admitted into evidence, and he did not do so.

The judgment is affirmed.

Judge ROTHENBERG and Judge ROY concur.